682 S.E.2d 268

**David NEAL, Respondent,**

v.

**Don H. BROWN and South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management, Defendants,**

**of whom Don H. Brown is the Petitioner.**

No. 26707.

Supreme Court of South Carolina.

Heard March 5, 2009.

Decided Aug. 24, 2009.

Rehearing Denied Sept. 16, 2009.

Andrew Epting, Jr., of Charleston, Clayton B. McCullough, and Daniel S. McQueeney, Jr., both of Pratt–Thomas & Walker, of Charleston, for Petitioner.

Michael A. Molony and Lea B. Kerrison, both of Young, Clement Rivers, of Charleston, for Respondent.

Chief Justice TOAL:

In this case, the Office of Ocean and Coastal Resource Management (OCRM) granted Respondent's application for a dock permit, and Petitioner appealed to the administrative law court (ALC). The ALC affirmed, and Petitioner appealed to OCRM's Appellate Panel, which reversed the grant of the permit. Respondent appealed to the circuit court, which affirmed the Appellate Panel's ruling. Respondent then appealed the Court of Appeals, which reversed the circuit court and held that Respondent was entitled to a dock permit. We granted Petitioner a writ of certiorari to review the Court of Appeals' decision.

## FACTUAL/PROCEDURAL BACKGROUND

In 1997, the McIver family conveyed three parcels of land in "Old Village" Mount Pleasant to Neal Brothers, Inc., of which Respondent David Neal ("Neal") is a part owner. The bulk of Neal's property is inland, and connected to Charleston Harbor by a narrow 5 foot wide, 119 foot long strip of property. Neal conducted a survey of the three parcels prior to the purchase, and recorded the survey with the Charleston County Register of Mesne Conveyances on September 10, 1997. Sometime thereafter, Neal Brothers transferred title of the property to Tompkins and Company, LLC ("Tompkins"), which is also partly owned by Neal.

In 1998, Neal first applied for a critical area permit to build a dock from the property's five feet of "water frontage." The OCRM denied the first application on the grounds that the lot "does not meet the minimum lot width standard in order to qualify for a single family dock." Neal filed and then withdrew an appeal, on the understanding that he could reapply for a permit.

In September 1999, an adjacent property owner claimed ownership of the narrow strip that connects Neal's property to the water. The trial court examined both chains of title and determined that Neal (through Tompkins) owned the property in fee simple absolute.

In June 2001, Neal resubmitted his application for a critical area dock permit. At the time, the regulation controlling dock permits provided:

> For lots platted and recorded after May 23, 1993, before a dock will be permitted, a lot must have 75 feet of water frontage along the marsh edge and at least 75 feet of frontage between extended property lines.... Lots less than 50 feet wide are not eligible for a dock.

23A S.C.Code Ann. Regs. 30–12(A)(2)(o) (Supp.2001) ("the regulation"). On September 12, 2001, the OCRM issued Neal a critical area dock permit, which allowed him to construct a 4 foot wide, 300 foot long dock from his 5 feet of "water frontage." Petitioner Don Brown ("Brown"), an adjacent property owner, appealed the issuance of the dock permit to the ALC, arguing that the property was not platted and recorded until 1997 and therefore did not comply with the regulation. The ALC found that "[t]he term 'platted and recorded' assumes the platting and recording involves a change in the configuration of the property." Finding that the 1997 recording of the survey was not the type of platting and recording intended to fall within the purview of the regulation, but was merely an action necessary to the purchase of land that had existed in the same configuration for over fifty years, the ALC upheld the issuance of the permit.

Brown appealed the ALC's decision to the OCRM's Coastal Zone Management Appellate Panel ("the Panel"). The Panel issued a brief opinion in which it reversed the issuance of the permit on the grounds that the ALC erred in holding that the 1997 recording did not constitute a platting and recording for the purposes of the regulation.

Neal appealed the Panel's decision to the circuit court, which affirmed the Panel. Neal then appealed to the Court of Appeals, which reversed the circuit court in a split decision. *David Neal v. Don H. Brown and South Carolina Department of Health and Environmental Control, Office of Ocean*

*and Coastal Resource Management,* 374 S.C. 641, 649 S.E.2d 164 (Ct.App.2007). The majority of the court found that there was substantial evidence in the record to support the ALC's finding that the regulation did not bar Neal's dock permit because the property had been in the current configuration since 1940 and the 1997 survey did not amount to having the property "platted and recorded" under the regulation. The majority also found that the circuit court erred in making new findings of fact on matters not decided by the Panel. Brown petitioned this Court for a writ of certiorari, and we granted the writ to answer the following question:

Did the Court of Appeals err in reversing the circuit court and upholding the issuance of Respondent's dock permit?

## STANDARD OF REVIEW

■■■■ In permitting cases, the ALC serves as the finder of fact. *Brown v. South Carolina Dep't of Health & Env. Control,* 348 S.C. 507, 520, 560 S.E.2d 410, 417 (2002). The Panel can reverse the ALC if the findings are not supported by substantial evidence or are based on an error of law. *Dorman v. South Carolina Dep't of Health & Env. Control,* 350 S.C. 159, 165, 565 S.E.2d 119, 122 (Ct.App.2002). Judicial review of the Panel's decision is governed by S.C.Code Ann. § 1–23–380(A)(5) (Supp.2006), which provides:

The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and · substantial evidence on the whole record; or

(f) arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

## Law/Analysis

The central question in this case is whether Neal's property was "platted and recorded" after May 23, 1993. The Panel and the circuit court held that Neal's 1997 survey constituted a "plat" under the regulation, and therefore, because Neal's water frontage is less than 75 feet, Neal should not be granted a critical area dock permit. The Court of Appeals held that Neal's 1997 survey did not constitute a "plat." We agree with the former interpretation therefore reverse the Court of Appeals.

We find this matter foreclosed by the fact that no single plat of the property in question was recorded prior to May 23, 1993. The McIver property initially consisted of three distinct parcels, each recorded separately with its own separate deed. Neal purchased these parcels together in 1997, conducted a "survey," and recorded the property for the first time as a single lot.[1] These facts alone indicate that this single piece of property was first "platted and recorded" after May 23, 1993, and that the regulation precludes the granting of a critical area dock permit.

Furthermore, the majority of the Court of Appeals relied heavily on OCRM employee Richard Chinnis's testimony before the ALC as to his interpretation of the term "plat." Chinnis drafted the regulation, and testified that the word "plat" as used in the regulation, was intended to indicate a subdivision of property, not the recordation of a survey. Based upon this testimony, the Court of Appeals concluded that Neal's "survey" did not constitute a "plat" that would bring him under the scope of the regulation, even though the Panel disagreed with Chinnis's interpretation.

We find that the Court of Appeals erred in granting Chinnis's testimony deference over the Panel's interpretation for two reasons. First, as we have previously held, an agency's Appellate Panel, not its staff, is typically entitled to deference in interpreting agency regulations. *S.C. Coastal Conservation League v. S.C. Dep't of Health & Env. Control,* 363 S.C. 67, 75, 610 S.E.2d 482, 486 (2005). The majority of the

---

1. The current boundary of the property was actually first recorded in 2001, after a challenge by an adjacent landowner resulted in some minor changes to the configuration of the property.

Court of Appeals should have deferred to the Panel's interpretation, rather than Chinnis's.

■ Second, the regulatory language is clear and unambiguous, and the Court of Appeals erred in interpreting the regulation to permit the issuance of a dock permit. "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Sloan v. Hardee,* 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). In our reading, the distinction between a "survey" and a "plat" is illusory. The key question is whether a piece of real property was mapped and recorded for the first time after the effective date of May 23, 1993. Chinnis's testimony indicates that he believed the regulation was intended to prevent the owners of newly-*subdivided* lots from building docks on less than seventy-five feet of water frontage. However, this could have been easily incorporated into the language of the regulation if this was the true intent. We believe the plain language of the regulation indicates that it was intended to prevent owners of all newly created lots—whether subdivided or amalgamated (as in the present case)—from building docks on less than seventy-five feet of water frontage. Notwithstanding Chennis's involvement in the drafting of the regulation, the Panel is entitled to deference in interpreting its own regulation, and it found that the regulation prevented the granting of a permit in this case. In our view, the plain language of the regulation supports this interpretation.

## CONCLUSION

For the reasons stated herein, we reverse the opinion of the Court of Appeals.

WALLER, J., and Acting Justices JAMES E. MOORE, PERRY M. BUCKNER and BROOKS P. GOLDSMITH, concur.